# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MARIO LEARY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:23CV903 |
| | ) | |
| OFFICER BULLARD, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on Defendants Leonard Bullard, Kent Sampson, Daniel Barnes, and Gene Ransom's (collectively "Defendants") Motion for Summary Judgment (Docket Entry 17) and Plaintiff Mario Leary's Motion for Summary Judgment (Docket Entry 20). The matters are ripe for disposition. For the reasons that follow, the undersigned recommends that Defendants' Motion for Summary Judgment be granted, and Plaintiff's Motion for Summary Judgment be denied.

## I. BACKGROUND

### a. Plaintiff's Complaint

Plaintiff brings claims under 42 U.S.C. § 1983 against Defendants in their individual capacities surrounding an alleged excessive force incident that occurred on July 16, 2023, at the Scotland Correctional Institution ("Scotland"). (*See* Complaint ("Compl."), Docket Entry

2 at 2-13.)[1]  Specifically on that morning, Plaintiff alleges that while handcuffed Defendants[2] "took [Plaintiff] to a room on Gray/red segregation hallway[,]" which Plaintiff believed to be a "nurse room."  (*Id.* at 12.)  Plaintiff next alleges that Defendant Barnes said to him, "you think you bad[?]"  (*Id.*)  After that, Plaintiff alleges that Defendant Sampson "punch[ed] [him] in the right eye. [T]hen Officer Bullard hit [Plaintiff] in the left side . . . with that stick officers car[ry] on them."  (*Id.*)  As Plaintiff was falling, Defendant Ransom "punch[ed] [him] in the mouth busting [his] lower lip."  (*Id.*)  While this was occurring, Plaintiff alleges that Defendant Barnes "went out the door to make sure no one was com[ing] while they beat [Plaintiff] up." (*Id.*)  Plaintiff alleges Defendants were kicking, punching, hitting him with a stick, spraying him with O.C. spray, and "then shocking [him] with the shocker."  (*Id.*)

Plaintiff further alleges that Defendant Barnes "said that was good [and] told [Plaintiff] to get up."  (*Id.*)  At this point, "[Plaintiff] could only see out of one eye" and could not adhere to the instructions to stand up as his hands were still cuffed behind his back.  (*Id.*)  An officer assisted Plaintiff to his feet, and he was escorted "to the hallway so [Defendant Barnes] could take pictures."  (*Id.*)  Plaintiff alleges that blood was on his face and back, and he was taken to the shower area "to get the blood and spray off [him]."  (*Id.*)  Afterwards, Plaintiff was taken "to the cage in the hall on Red segregation," and then Defendants Bullard and Sampson subsequently took Plaintiff to intake.  (*Id.*)  Plaintiff alleges that Defendant Bullard told him

---

[1] Unless otherwise noted, all citations herein refer to the page numbers at the bottom right-hand corner of the documents as they appear in the Court's CM/ECF system.

[2] Plaintiff refers to Defendants in the Complaint as "Lieutenant Barnes," "Officer Bullard," Sergeant Rumsom," and "Officer K. Samsom."  (*See* Compl. at 12.)

"that the beat[ing] they gave [Plaintiff] was not personal[;] [Defendant] Bullard said it was [Defendant Barnes] who told them to do it." (*Id.* at 13.)

Plaintiff alleges next that Defendants Bullard and Sampson transported him to Granville Correctional Institution. (*Id.*) After arriving at Granville, Plaintiff alleges that correctional officials there took pictures of Plaintiff and escorted him to see the nurse. (*Id.*) Plaintiff alleges that his "right knee is [messed] up because [of what] the officer at Scotland did to [him]." (*Id.*) Plaintiff further alleges that "[he] had to go to a knee doctor[, who] ask[ed] [Plaintiff] how [he] got the knot on the side [of Plaintiff's knee and Plaintiff] told him [he] got beat by officer. [Plaintiff is] waiting to get a[n] MRI done." (*Id.*) Plaintiff seeks monetary damages against Defendants. (*Id.* at 5.)

Defendants filed an answer (Docket Entry 7) and discovery commenced with a discovery completion date of September 3, 2024. (*See* Docket Entry 8.) After discovery concluded, Plaintiff filed a Letter Motion to Appoint Counsel (Docket Entry 14) in which, among other things, Plaintiff sought discovery, contending that if the Court receives a "video and pictures it will be a[n] open in close case[.]" (Docket Entry 14 at 1.) Plaintiff's Motion to Appoint Counsel was denied without prejudice, and the Court found that Plaintiff had not demonstrated good cause to reopen discovery. (*See* Text Order dated Jan. 9, 2025.)

b. <u>Defendants' Summary Judgment Material</u>

Defendants move for summary judgment "on the grounds that [they] did not violate Plaintiff's Eighth Amendment and Fourteenth Amendment rights." (Docket Entry 17.) Along with a brief in support of their motion, Defendants Barnes, Ransom, and Sampson each filed declarations. (*See* Declaration of Captain Daniel Barnes ("Barnes Decl."), Docket Entry

3

18-1; Declaration of Sergeant Geno Ransom ("Ransom Decl."), Docket Entry 18-3; Declaration of Officer Kent Sampson ("Sampson Decl."), Docket Entry 18-4.).) Defendants also filed the relevant Incident Report and Plaintiff's medical history as maintained by the North Carolina Department of Adult Correction ("NCDAC"). (*See* NCDAC Incident Report ("Incident Report"), Docket Entry 18-2; NCDAC Health Problems ("Medical History"), Docket Entry 18-5.).)

Defendants' declarations, along with the Incident Report, focus on two separate use of force incidents which occurred on July 16, 2023. (*See* Barnes Decl. ¶¶ 24-42; Ransom Decl. ¶¶ 23-36; Sampson Decl. ¶ 24-42; *see also* Incident Report.).) Defendant Barnes, having averred to no personal involvement or observation of either incident, gives his declaration from his awareness of the facts through his supervisory role in "oversee[ing] the post-use of force response, check[ing] in on the involved officers, and [Defendant Barnes'] review of the relevant incident reports." (Barnes Decl. ¶¶ 24, 41-42.) Defendant Ransom gives his declaration from his direct involvement in the first use of force incident but declares he was not present at the second use of force incident because he was "consoling [another correctional officer] since this was her first time being involved in [an assault on an officer incident]." (Ransom Decl. ¶ 35.) It is unclear as to whether Defendant Sampson was involved in the first use of force incident,[3] but regarding the second use of force incident—the one

---

[3] Defendant Sampson says he deployed his taser on Plaintiff after he refused Defendant Ransom's order to submit to handcuffs during the *first* use of force incident. (Sampson Decl. ¶¶ 32-33.) The rest of Sampson's declaration and the other exhibits attached suggests that Defendant Sampson was not physically involved during the first use of force incident as the situation was under control upon his arrival. (*See* Incident Report at 3; *see also* Sampson Decl. ¶ 35.) Despite the conflict in accounts, the issue is not material to either Motion for Summary Judgment as it involves the first and not second use of force incident. Thus, the conflict will not be weighed in resolving the motions.

4

from which Plaintiff's Complaint arises—Defendant Sampson declares, as further explained below, that he and the other correctional officials only restrained Plaintiff with hands-on force after he attempted to headbutt Defendant Sampson. (Sampson Decl. ¶¶ 39, 41.)

By way of background, Defendant Barnes, Sampson and Ransom have explained the use of force and pepper spray policies and procedures at Scotland. (Ransom Decl. ¶¶ 6-13; Barnes Decl. ¶¶ 7-14; Sampson Decl. ¶¶ 7-14.) Use of force is permitted when an offender fails to obey with a prison official's orders "related to the maintenance of legitimate safety or the good order and security of [Scotland], and [when] an offender engages in acts of violence against NCDAC employees or other offenders, and such force is necessary to maintain the legitimate safety or the good order and security of [Scotland]." (Barnes Decl. ¶ 9.) Offenders are initially given verbal commands and if they fail to obey, pepper spray may be used. (*Id.* ¶ 8.) If the offender is still not under control, hands-on-force with approved techniques is permitted. (*Id.*) Additional forms of force are authorized if compliance is still not met, with deadly force as a "last resort" option "to prevent a life-threatening assault on staff or another offender." (*Id.*)

Offenders must be searched, evaluated by medical officials, and decontaminated when pepper spray is used. (*Id.* ¶¶ 10-11.) Further, "[i]f there is an assault on an officer, known as a code 7, then the officers who were [ ] assaulted will be separated from the offender[,]" and all procedures regarding the search and evaluation of the offender are handled by prison officials "who were not assaulted by the offender." (*Id.* ¶ 12.) In instances where both the

---

*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (Courts will only consider "disputes over facts that might affect the outcome of the suit under governing law.")

offender and an officer require medical attention, they are not medically evaluated at the same time, or alternatively, evaluated in separate locations, one of which may be a room known as "the MCON medical room." (*Id.* ¶ 14.)

For further background context, the undersigned now turns to the initial incident on July 16, 2023. According to Defendants' evidence, Plaintiff assaulted an officer on the blue unit Delta Pod by striking him "in the face with a closed fist" after Plaintiff approached him about a writeup. (Ransom Decl. ¶¶ 23-25; Barnes Decl. ¶¶ 24-26; Sampson Decl. ¶¶ 24-26; Incident Report at 1, 6.) Other officers intervened, using hands-on techniques to separate Plaintiff in addition to administering pepper spray after Plaintiff was also given orders to submit to handcuffs which he refused. (Ransom Decl. ¶¶ 26-28; Barnes Decl. ¶¶ 27-29; Sampson Decl. ¶¶ 27-29; *see also* Incident Report at 1-2, 6.) Plaintiff subsequently entered the D-40 cell "appearing to reach for an object." (Ransom Decl. ¶ 30; Barnes Decl. ¶ 30; Sampson Decl. ¶ 31; *see also* Incident Report at 2.) Defendant Ransom gave Plaintiff "another direct order to submit to handcuffs," which Plaintiff refused. (Ransom Decl. ¶ 31.) Defendant Ransom thereafter deployed his taser, and Plaintiff was secured with handcuffs. (*Id.* ¶¶ 32-33; Barnes Decl. ¶¶ 32-33; Incident Report at 2.)

The next turn of events involves the second use of force incident, the one from which Plaintiff's instant Complaint arises. After being placed in handcuffs, Plaintiff was escorted to the MCON room (for medical evaluation) by multiple correctional officers, including Defendants Bullard and Sampson. (Barnes Decl. ¶ 34; Sampson Decl. ¶ 36; Incident Report at 2-4.) While in the MCON room, Plaintiff became combative by attempting to headbutt Defendant Sampson. (Sampson Decl. ¶ 38; Barnes Decl. ¶ 36; Incident Report at 3-4, 9.) For

6

everyone's safety, officers then used hands-on force to restrain Plaintiff. (Sampson Decl. ¶ 39; Barnes Decl. ¶ 37.) According to the Incident Report, the officers in the MCON room who actually engaged in hands-on force to restrain Plaintiff were Defendants Bullard, Sampson, and Officer Christian Ransom, the latter who is not a defendant in this action. (*See* Incident Report at 3, 6-7 ("While in the medical exam room, offender Leary attempted to assault staff again, and hands-on physical force was used to gain compliance by officers Sampson, Ransom, and Bullard."); *see also id.* at 8-9 (explaining participants and type of force used). The Incident Report states that "[Plaintiff] was then placed on the medical floor to regain control." (*Id.* at 3.) Defendant Sampson avers that "[b]esides restraining Plaintiff after he attempted to headbutt [Sampson], no other force was used on Plaintiff . . . ." (Sampson Decl. ¶ 41.) Plaintiff was then transferred to another prison facility. (Barnes Decl. ¶ 40.)

The Incident Report also contains a review of some captured video recordings at the time of the first use of force incident, but regarding the second use of force incident, the report states that "[t]he use of force that was reported to have occurred in the MCON exam room cannot be viewed." (Incident Report at 6.) The Incident Report concluded that "staff followed all policies and procedures "and "[o]nly the amount of force was used to get the situation under control." (*Id.* at 10.)

c.  Plaintiff's Summary Judgment Material

In response to Defendants' motion for summary judgment, Plaintiff filed his own Motion for Summary Judgment. (Docket Entry 20.) In his Motion, Plaintiff contests Defendants' statements made in support of their Motion for Summary Judgment by expanding on his account of the July 16, 2023 incident. (*See id.*) As to the first use of force incident,

7

Plaintiff provides a different version of events but admits to "try[ing] to hit" an officer after a verbal exchange. (*Id.* at 1.) Plaintiff then proceeds to explain differing accounts of what happened next, including that he entered his room to get away from a prison official's baton and to run water into his burning eyes, and that he was "coming to submit" to handcuffs as ordered until Defendants Ransom and Bullard intervened. (*Id.*)

As to the use of force incident in the MCON medical room, Plaintiff states that he was told "to lay face down on the bed," after which Defendant Barnes said to Plaintiff "you know what['s] about to happen for putting you[r] hands [on] my officer[.]" (*Id.* at 2.) Plaintiff states that's "when the assault" started. He further states that Defendants Bullard, Ransom, and Sampson were the only persons present and assaulted him with their hands and batons, and that Defendant Barnes "step[ped] out of the room but was [standing] in front of the door window [so] no one c[ould] see in the room." (*Id.*) Plaintiff denies trying to headbutt anyone. (*Id.*) After the incident, while Defendants were in the process of moving Plaintiff to Granville Correctional Institution, Plaintiff states that Defendant Bullard told him that "the beatin[g] they gave [Plaintiff] was not personal it['s] just what they do when you hit a[n] officer." (*Id.*)

Plaintiff further asks the Court to review grievances which are not attached to his motion. (*Id.* at 4.) In addition, he seeks video, medical records, and other evidence which he believes supports his claims. (*Id.*) Plaintiff otherwise refutes Defendants' version of events. (*See id.* at 5-6.)

## II. DISCUSSION

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Zahodnick*

*v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. *Temkin v. Frederick Cnty. Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)). Once the moving party has met their burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert Cnty., Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear their burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting).

When making the summary judgment determination, the Court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997). However, the party opposing summary judgment may not rest on mere allegations or denials, and the Court need not consider "unsupported assertions" or "self-serving opinions without objective corroboration." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996); *see also Anderson*, 477 U.S. at 248-49. "When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (citation omitted).

A. **Excessive Force**

Defendants argue that the excessive force claims against them should be dismissed because Plaintiff's use of force claims against Defendants Sampson and Bullard are unsupported by the record and Plaintiff's use of force claims against Defendants Barnes and Ransom are blatantly contradicted by the record. (Docket Entry 18 at 9-15.) As a preliminary matter, Plaintiff brings excessive force claims against Defendants under both the Eighth and Fourteenth Amendments. (Compl. at 3.) Plaintiff also indicates that he is a "convicted and sentenced state prisoner." (*Id.* at 4.) Since Plaintiff's allegations occurred at a time after he was already convicted, his claims will be assessed solely under the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 318 (1986); *cf. Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015) ("[P]etrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically.'" (internal citation omitted)).

"The Eighth Amendment protects prisoners from unnecessary and wanton infliction of pain." *Thompson v. Commonwealth of Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (internal quotations and citation omitted). Prison officials have "an affirmative obligation to take reasonable measures to guarantee [inmates'] safety." *Id.* (internal quotations and citation omitted). Accordingly, when evaluating an excessive force claim, the Court "must determine 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* at 98 (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). To make this determination, the Court considers two elements: "whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether

10

the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (internal quotations and citation omitted).

The objective component

> focuses not on the severity of any injuries inflicted, but rather on "the nature of the force," which must be "nontrivial." *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010) (citing *Hudson*[, 503 U.S. at 7]); *cf. Wilkins*, 559 U.S. at 37 (explaining that the extent of injury suffered may indirectly "provide some indication of the amount of force applied"). Not every "malevolent touch by a prison guard" is necessarily a constitutional violation. *Hudson*, 503 U.S. at 9. The Eighth Amendment "excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* at 10 [internal quotation and citation omitted].

*Garris v. Gober*, No. 1:10-CV-504, 2013 WL 4502261, at *1 (M.D.N.C. Aug. 22, 2013), *aff'd*, 554 F. App'x 211 (4th Cir. 2014).  In other words, "there is no 'significant injury' threshold to sustain an excessive force claim because a de minimis injury, if the product of malicious and sadistic use of force, can sustain the claim." *Parker v. Stevenson*, 625 F. App'x 196, 198 (4th Cir. 2015) (quoting *Wilkins*, 559 U.S. at 37-38).

As for the subjective component, "[t]he state of mind required in excessive force claims is 'wantonness in the infliction of pain.'" *Iko*, 535 F.3d at 239 (quoting *Whitley*, 475 U.S. at 322).  The Supreme Court has considered four non-exclusive factors to assist courts in determining wantonness conduct: "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) any

11

efforts made to temper the severity of a forceful response." *Id.* (citing *Whitley*, 475 U.S. at 321) (internal quotations omitted). "From such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321. In reviewing the record, "[i]f a reasonable jury could find . . . that correctional officers used force maliciously to punish or retaliate against an inmate, then summary judgment is not appropriate." *Dean v. Jones*, 984 F.3d 295, 302-03 (4th Cir. 2021).

### 1. There exists no genuine issue of material fact as to whether Defendants Sampson and Bullard used excessive force.

Assuming *arguendo* that Plaintiff can satisfy the objective prong of an Eighth Amendment claim,[4] the undersigned concludes that he is unable to establish that Defendants Sampson and Bullard's actions violated the subjective requirement. Considering the facts in the light most favorable to Plaintiff, and considering the *Whitley* factors, there is no genuine issue of material fact as to whether the use of force by Defendants Sampson and Bullard

---

[4] Defendants argue that "the record shows that Plaintiff suffered no discernable injury as a result of the use of force incident in MCON medical room, or at most suffered a *de minimis* injury." (Docket Entry 18 at 14.) As further explained herein, the undersigned finds that the record evidence does not support Plaintiff's claims of being punched, kicked, hit with a baton, pepper sprayed, or tased in the MCON room. However, Plaintiff's injuries include claims of a knee and lip injury. (Compl. at 12-13.) While Defendants suggest that Plaintiff's "chronic knee pain was a preexisting condition" (Docket Entry 18 at 14; *see also* Medical History, Docket Entry 18-5) and Plaintiff's injury is at most only *de minimis*, "there is no 'significant injury' threshold to sustain an excessive force claim because a de minimis injury, if the product of malicious and sadistic use of force, can sustain the claim." *Parker*, 625 F. App'x at 198. Indeed, the objective component "is not a high bar[,]" *Dean*, 984 F.3d at 302; rather it is "contextual and responsive to contemporary standards of decency, and is always satisfied when prison officials maliciously and sadistically use force to cause harm." *Greene v. Feaster*, 733 F. App'x 80, 81 (4th Cir. 2018) (cleaned up).

12

during the second July 16, 2023, incident in the MCON medical room was excessive. As to the first factor (the need for the application of force), the evidence demonstrates that there was a need for the use of force on Plaintiff by Defendants Sampson and Bullard as Plaintiff was being combative and attempting to headbutt Defendant Sampson, a clear immediate risk to physical safety. (Incident Report at 3-4, 9; Sampson Decl. ¶¶ 36, 38-39.) Again, Scotland prison policy permits use of force against an offender engaging in acts of violence against prison employees, if such force "is necessary to maintain the legitimate safety or the good order and security" of the prison facility. (Barnes Decl. ¶ 9.) In other words, "[c]orrections officers act . . .with a permissible motive . . . not only when they confront immediate risks to physical safety, but also when they attempt to preserve internal order by compelling compliance with prison rules and procedures." *Brooks v. Johnson*, 924 F.3d 104, 113 (4th Cir. 2019) (internal quotations and citations omitted); *see also Boose v. Adkins*, No. 3:18-cv-1480, 2020 WL 3086885, at *13 (S.D. W. Va. May 20, 2020) (explaining that "[c]ourts in this Circuit have routinely held that law enforcement and correctional officers may deploy force in response to threatening, disruptive, or assaultive behavior" and that "[t]he need for the application of force when an inmate engages in disruptive behavior and initiates physical confrontation with a correctional officer is clear") (collecting cases), *report and recommendation adopted*, No. CV 3:18-1480, 2020 WL 3078333 (S.D. W. Va. June 10, 2020). Therefore, this factor weighs in Defendants' favor.

Furthermore, as to the second factor (the relationship between the need and the amount of force that was used), the force used by the correctional officers was only "hands-on force to secure Plaintiff to a flat surface to promote the safety of all involved" (Sampson

13

Decl. ¶ 39) and "to get the situation under control." (Incident Report at 10.) Under the circumstances and facing imminent threat of serious injury, Defendant Sampson along with the other officials' responses were proportional to the threat presented. *See Boose*, 2020 WL 3086885, at *14 ("A brief deployment of force in response to disruptive and threatening behavior does not rise to the level of wanton infliction of pain that is required to establish a violation of the Eighth Amendment."), *report and recommendation adopted*, No. CV 3:18-1480, 2020 WL 3078333 (S.D.W. Va. June 10, 2020); *see also Washington v. Lambert*, No. 3:12-CV-292-RJC, 2014 WL 4667078, at *5 (W.D.N.C. Sept. 18, 2014) (finding use of force appropriate when prisoner failed to comply with orders, and pushed and lunged threateningly toward correctional officer). Thus, this factor weighs in Defendants' favor.

Considering the third factor (the extent of any reasonably perceived threat that the application of force was intended to quell), Defendants Sampson and Bullard, along with other officials observed Plaintiff display combative behavior towards Defendant Sampson in the MCON room. (Sampson Decl. ¶¶ 38, 40; Barnes Decl. ¶ 36, 38; Incident Report at 3-4, 9.) Plaintiff's attempt to headbutt Defendant Sampson thus manifested the kind of "unambiguously threatening movement" that alerts correctional officers to a reasonably perceived threat justifying a use of force in response to potential physical harm. *Canterbury v. Adkins*, No. 3:18-CV-01530, 2020 WL 1891687, at *13 (S.D.W. Va. Jan. 9, 2020); *Payton v. Holcomb*, No. 1:20CV801, 2024 WL 2188902, at *8 (M.D.N.C. May 15, 2024) ("Violent and disruptive situations within a jail or correctional setting ... present obvious threats to jail security." (internal quotations and citations omitted), *report and recommendation adopted*, No. 1:20-

CV-801, 2024 WL 3234122 (M.D.N.C. June 28, 2024). Thus, the third *Whitley* factor also favors Defendants Sampson and Bullard.

Moreover, the undersigned concludes that Defendants Sampson and Bullard made efforts to temper the severity of a forceful response. Plaintiff previously engaged in assaultive behavior upon an official during the initial encounter on July 16, 2023, failed to comply with orders from officials, and continued violent and aggressive behavior in the MCON room. (Incident Report at 1-4; Ransom Decl. ¶¶ 23-32; Barnes Decl. ¶¶ 24-36; Sampson Decl. ¶ 38.) Defendants Sampson and Bullard's use of hands-on-force when Plaintiff continued to be violent was for everyone's safety. (Sampson Decl. ¶ 39.) Thus, they had no purpose other than to gain control of Plaintiff and maintain order. *See* Incident Report at 6 ("hands-on physical force was used to gain compliance); *Bell v. Wolfish*, 441 U.S. 520, 547 (1979) ("[T]he problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions. Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."). Consequently, the fourth *Whitley* factor also weighs in Defendants Sampson and Bullard's favor.

Plaintiff fails to present sufficient evidence to survive summary judgment. At the outset, Plaintiff's only filing in response to Defendants' motion is his cross Motion for Summary Judgment. (*See* Docket Entry 20.) First, Plaintiff's filing suffers from procedural deficiencies in that he has failed to sign the document. (*See id.*; *see also* Fed. R. Civ. P. 11(a) ("Every pleading, written motion, and other paper must be signed by . . . a party personally if the party is unrepresented.").) Beyond that and to the extent construed as an opposition brief

15

to Defendants' motion, Plaintiff does not "come forward with facts sufficient to create a triable issue of fact." *Temkin*, 945 F.2d at, 718-19.

As to the incident in the MCON room, Plaintiff reiterates that Defendant Barnes was standing outside of the room while the assault occurred and that only Defendants Bullard, Sampson, and Ransom were present. (Docket Entry 20 at 2.) Further, Plaintiff denies attempting to headbutt anyone as he was handcuffed during that time. (*Id.* at 3.) However, Plaintiff's conclusory assertions are blatantly contradicted by the record including the Incident Report noting other officials inside the MCON room or otherwise witnessing Plaintiff attempt to headbutt Defendant Sampson. (*See* Incident Report at 3-4.)[5] Moreover, none of the officials witnessing the MCON incident mention any punching, kicking, baton usage, pepper spray usage, or taser usage by any officials. (*See id.*)

Further, Plaintiff provides differing accounts of what transpired during the first encounter on July 16, 2023. (*See* Docket Entry 20 at 1, 3, 5-6.) To the extent Plaintiff is seeking to address a separate claim of force during the first incident near his cell area, "Plaintiff cannot amend the complaint to add additional allegations in response to a motion for summary judgment, particularly where discovery is closed[,] and dispositive motions have been filed." *Medrano Ortiz v. Solomon*, No. 5:15-CT-3251-FL, 2019 WL 1245779, at \*9 n.13 (E.D.N.C. Mar. 18, 2019), *aff'd sub nom. Ortiz v. Solomon*, 778 F. App'x 236 (4th Cir. 2019). Moreover, Plaintiff asks the Court to view video footage, grievances, photos, and medical records which support his claim that Defendants engaged in excessive force. (*See* Docket Entry 20 at 1, 4.) However,

---

[5] Again, the evidence reflects that a "Correctional Officer III Christain [sic] Ransom" was present in the MCON room. (Incident Report at 3; Sampson Decl. ¶¶ 40.) However, that officer is not a defendant in this action.

16

Plaintiff never sought to compel its production during discovery, nor is there any reason to permit such at this time. *See* Rule 56(d) (setting forth grounds to warrant additional discovery during summary judgment stage); *Evans*, 80 F.3d at 961 ("A party may not simply assert in its brief that discovery was necessary and thereby overturn summary judgment when it failed to comply with the requirement of Rule 56(f) to set out reasons for the need for discovery in an affidavit." (cleaned up); *Newton v. Locklear*, No. 1:22CV388, 2025 WL 473631, at *6 (M.D.N.C. Feb. 12, 2025) ("[T]o the extent Plaintiff argues that Defendants failed to produce discovery requests, Plaintiff never properly sought to compel its production during discovery, nor is there any reason to permit such at this time."). Nor has Plaintiff explained how such evidence will create a genuine issue of material fact. For example, as stated above, the Incident Report indicates that "[t]he use of force that was reported to have occurred in the MCON exam room cannot be viewed." (Incident Report at 6.)

Ultimately, Plaintiff fails to refute that Defendants acted in a good-faith effort to maintain and restore discipline under the totality of the circumstances. Therefore, under the circumstances the *Whitley* factors weigh in favor of Defendants Bullard and Sampson, thus "no reasonable jury could find that [they] applied force maliciously and sadistically for the very purpose of causing harm[.]" *Geddings v. Roberts*, No. 1:15CV264, 2018 WL 1626116, at *12 (M.D.N.C. Mar. 30, 2018). The Court should therefore grant summary judgment to Defendants Bullard and Sampson as to Plaintiff's excessive force claim.

## 2. Defendants Barnes and Ransom lack personal involvement in the MCON incident.

Next, the undersigned concludes that Defendants Barnes and Ransom are entitled to summary judgment. Defendants argue that Plaintiff's use of force claims against Defendants Barnes and Ransom are blatantly contradicted by the record. (Docket Entry 18 at 15.) Defendants are essentially asserting that these individuals were not personally involved in the use of force incident in the MCON room. (*Id.*) "As a general matter, a law officer may incur [individual Section] 1983 liability only through affirmative misconduct." *Randall v. Prince George's Cnty.*, 302 F.3d 188, 202 (4th Cir. 2002) (citing *Parratt v. Taylor*, 451 U.S. 527, 535-36 (1981)). "[Section] 1983 must be 'read against the background of tort liability that makes a man responsible for the natural consequences of his actions.'" *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (quoting *Monroe v. Pape*, 365 U.S. 167, 187 (1961)). Thus, "it must be affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (internal quotations and citation omitted); *accord Williamson v. Stirling*, 912 F.3d 154, 171 (4th Cir. 2018).

Here, there is no basis here to find liability on the part of Defendants Barnes or Ransom because the record evidence, including the Incident Report, demonstrate that they were not present, nor participated in the incident in the MCON room. (*See* Incident Report at 2-4.) Rather, Defendant Barnes was providing support where needed and Defendant Ransom was checking on another official involved in the first incident. (Ransom Decl. ¶ 35; Barnes Decl. ¶¶ 41-42.) Plaintiff's unverified Complaint and summary judgment filing does not create a genuine issue of material fact as to Defendants Barnes or Ransom's involvement in the use of

force during the alleged incident. *See Payton*, No. 1:20CV801, 2024 WL 2188902, at *6 ("[T]he only *evidence* in the record establishes that neither [prison officials] participated in the challenged use of force against Plaintiff."); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). Therefore, summary judgment should be granted in favor of Defendants Barnes and Ransom as to Plaintiff's excessive force claim.[6]

### B. Defendants are entitled to qualified immunity.

Alternatively, Defendants argue that they are entitled to qualified immunity. (Docket Entry 18 at 15-16.) Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006) ("Qualified immunity shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983[.]"). Thus, the traditional two-step qualified immunity inquiry requires a court to determine: "(1) whether the official violated a

---

[6] Any claim against Defendant Barnes under supervisory liability would also fail. "It is well settled that there can be no supervisory liability when there is no underlying violation of the Constitution." *Phillips v. Bailey*, 337 F. Supp. 2d 804, 807 (W.D. Va. 2004); *Williams v. Cullins*, No. 5:18-CT-3366-FL, 2022 WL 948083, at *5 (E.D.N.C. Mar. 29, 2022) ("Given the fact that there is no underlying constitutional violation, plaintiff's supervisor . . . claims against defendants . . . also lack merit."); *Hinkle v. City of Clarksburg*, 81 F.3d 416, 420 (4th Cir. 1996) (holding that absent an underlying constitutional violation, a supervisory claim under § 1983 also fails).

19

constitutional right; and if so, (2) whether the right was 'clearly established' at the time of its violation." *Rock for Life-UMBC v. Hrabowski*, 411 F. App'x 541, 547 (4th Cir. 2010) (citation omitted).

Here, Plaintiff has not demonstrated a violation of a constitutional right. Instead, the undisputed evidence illustrates that Defendants Sampson and Bullard did not use excessive force during the July 2023 incident in the MCON room, and Defendants Barnes and Ransom were not personally involved in the incident. Therefore, this Court concludes that Defendants are entitled to qualified immunity. *See Abney v. Coe,* 493 F.3d 412, 415 (4th Cir. 2007) (finding that "[i]f [an official] did not violate any right, he is hardly in need of any immunity and the analysis ends right then and there").

## Plaintiff's Motion for Summary Judgment

Plaintiff also moves for summary judgment as to the claims against Defendants in this matter. (Docket Entry 20.) The undersigned has already noted the filing deficiencies above. Beyond that, as determined above and based on the facts in the light most favorable to Plaintiff, he has failed to establish a genuine issue of material fact and summary judgment should be granted in favor of Defendants. Therefore, Plaintiff's motion for summary judgment should be denied. *See Grady v. McPhearson*, No. 5:17-CT-3211-FL, 2020 WL 5821840, at *5 (E.D.N.C. Sept. 30, 2020) ("Because the court has determined that, based on facts in the light most favorable to plaintiff, he has failed to establish a genuine issue of material fact precluding summary judgment on his claims, plaintiff's motion for summary judgment must fail."), *aff'd sub nom. Grady v. McPherson*, 840 F. App'x 745 (4th Cir. 2021); *Brandon Chrishon Polk v. Stanly Cnty.*, No. 1:22CV613, 2024 WL 1287372, at *15 (M.D.N.C. Feb. 23, 2024)

20

(concluding that defendants' summary judgment motion should be granted and plaintiff's cross motion be denied), *report and recommendation adopted sub nom. Polk v. Stanly Cnty.*, No. 1:22CV613, 2024 WL 1286241 (M.D.N.C. Mar. 26, 2024).

## III. CONCLUSION

For the reasons sated herein, **IT IS HEREBY RECOMMENDED** that Defendants' Motion for Summary Judgment (Docket Entry 18) be **GRANTED**, Plaintiff's Motion for Summary Judgment (Docket Entry 20) be **DENIED**, and this action be dismissed with prejudice.

     /s/  Joe L. Webster     

United States Magistrate Judge

August 5, 2025
Durham, North Carolina